**MCI TELECOMMUNICATIONS CORP.**

v.

**GARDEN STATE INVESTMENT CORP.**

**Civ. No. 4–92–141.**

United States District Court,
D. Minnesota,
Fourth Division.

May 27, 1992.

Donna M. Roberts, MCI, Washington, D.C., Carol S. Giuliani, Drake & Rogosheske, Minneapolis, Minn., for plaintiff.

## ORDER

ROSENBAUM, District Judge.

### BACKGROUND

Plaintiff MCI Telecommunications Corporation is a provider of interstate telecommunication services to individual and corporate users. Plaintiff alleges that it provided telecommunication services to defendant Garden State Investment Corporation, doing business as Adventures in Achievement, from September, 1989, to September, 1991, under the terms and conditions of MCI FCC Tariff No. 1 (the tariff), which is required by law to be filed with the Federal Communications Commission (FCC). *See* Communications Act of 1934, 47 U.S.C. § 203 (1982).

On February 11, 1992, plaintiff instituted this action seeking collection of $14,408.29 in unpaid telecommunications service fees. Plaintiff asserts federal jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 (1982) and the Communications Act of 1934, 47 U.S.C. § 151 *et seq.* (1982).

### ANALYSIS

■ This Court has an obligation to make a thorough inquiry into the facts supporting federal jurisdiction. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982). *See also* Fed.R.Civ.P. 12(h)(3).

Plaintiff asserts federal jurisdiction under 28 U.S.C. §§ 1331 and 1337 (1982) and the Communications Act of 1934, 47 U.S.C. § 151 *et seq.* (1982). Section 1331 states, "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (1982). Section 1337 is similar, providing for jurisdiction in cases "arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies...." 28 U.S.C. § 1337 (1982).

■ The question of whether a claim "arises under" federal law is determined according to the "well pleaded complaint" doctrine. *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 808, 106

S.Ct. 3229, 3232, 92 L.Ed.2d 650 (1986); *Gully v. First Nat'l Bank in Meridian,* 299 U.S. 109, 113, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936). *See also First Federal Savings & Loan Ass'n, Etc. v. Anderson,* 681 F.2d 528 (8th Cir.1982). The "well pleaded complaint" doctrine instructs that the federal question upon which subject matter jurisdiction is based must be "disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." *Gully,* 299 U.S. at 113, 57 S.Ct. at 98. The same standards apply to determine whether a claim "arises under" § 1331 or § 1337. *See Springfield Television, Inc. v. City of Springfield, Mo.,* 428 F.2d 1375 (8th Cir. 1970).

■ Plaintiff asserts that its claim for unpaid telecommunications service fees "arises under" the Communications Act because the tariff governing its billing methods is on file with, and subject to, the regulation of the FCC. Plaintiff relies upon *Ivy Broadcasting Co. v. American Telephone & Telegraph Co.,* 391 F.2d 486 (2nd Cir.1968), and *Nordlicht v. New York Telephone Co.,* 799 F.2d 859 (2nd Cir.1986), *cert. denied,* 479 U.S. 1055, 107 S.Ct. 929, 93 L.Ed.2d 981 (1987).

This Court finds that federal subject matter jurisdiction does not exist. Moreover, although the result in *Ivy* is contrary to this Court's holding, the considerations and rationale advanced in *Ivy* and *Nordlicht* are supportive.

In *Ivy,* the plaintiff brought an action against AT & T on negligence and breach of contract theories. AT & T counterclaimed to recover charges allegedly due and unpaid. The district court dismissed the claims for lack of federal jurisdiction. The Second Circuit reversed, holding that for certain classes of claims:

> Questions concerning the duties, charges, and liabilities of telegraph or telephone companies with respect to interstate communication services are to be governed solely by federal law and that the states are precluded from acting in this area. Where neither the Communications Act itself nor the tariffs filed pursuant to the Act deals with a particu-

lar question, the courts are to apply a uniform rule of federal common law. *Ivy,* 391 F.2d at 491.

The Second Circuit reasoned that in order to implement the Congressional purpose of uniform rates and services, nationwide standards for the actual rendition of telecommunications services were necessary and could only be achieved through the application of uniform federal law to these disputes. *Ivy,* 391 F.2d at 491. The court noted that the fact that a contract is subject to federal regulation does not, in itself, demonstrate that Congress meant all aspects of its performance or nonperformance to be governed by federal law rather than by state law. *Ivy,* 391 F.2d at 490. The question then, the court explained, is whether the application of federal law to the claim is needed to assure nationwide uniformity of rates and services. *Id.*

In *Nordlicht,* the plaintiff alleged violations of traditional common law standards which challenged the rates and the billing practices of the carrier. The Second Circuit reaffirmed *Ivy* for the proposition that the mere fact that the Communications Act governs certain aspects of the carrier's billing relationships with its customers does not mean that plaintiff's claims arise under the Act. *Nordlicht,* 799 F.2d at 861.

The present claim does not, upon its face, allege specific violation of the Communications Act. Thus, the Act does not expressly grant the district court jurisdiction. *See* Communications Act of 1934, 47 U.S.C. § 207 (1982). Moreover, the claim does not challenge the rates, nor does it seek to establish standards for telecommunication service. The claim is simply a contract action seeking to recover payment for services rendered. Thus, in considering whether the claim "arises under" the Act, this Court adopts the rationale advanced in *Ivy* and *Nordlicht.* The critical inquiry is whether there is a need for uniform federal common law on claims seeking collection for unpaid telecommunication service fees. This Court finds no such need.

The stated Congressional purpose for the Communications Act is to provide uniform telecommunication rates and services. *See*

47 U.S.C. § 151 (1982). This purpose will not be curtailed by applying state contract principles to collect unpaid service fees. The plaintiff, and similar telecommunication carriers, will simply be put in the same position as any other business which enters into commercial contracts.

Furthermore, plaintiff's claim does not "arise under" the Communication Act merely because parts of the contract between the parties are governed by the Communication Act. This reading of jurisdiction over a claim "arising under" the Communications Act would imply that Congress intended to occupy the entire field of telecommunications to the exclusion of any traditional state common law principles. This is clearly not the case. Congress included a "savings clause" in the Communications Act which provides that "[n]othing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 47 U.S.C. § 414 (1982). Thus, it appears that Congress intended to occupy only so much of the telecommunication field as is necessary to provide uniform rates and services from state to state. This Court finds that an application of uniform federal law to a collection claim is not required to maintain consistency in the rates and services of telecommunication carriers.

Although not of binding legal authority, this Court takes note of two Illinois decisions, *Kellerman v. MCI Telecommunications Corp.*, 112 Ill.2d 428, 98 Ill.Dec. 24, 493 N.E.2d 1045, *cert. denied*, 479 U.S. 949, 107 S.Ct. 434, 93 L.Ed.2d 384 (1986), and *American Inmate Phone Systems, Inc. v. US Sprint Communications Co. Ltd.*, 787 F.Supp. 852 (N.D.Ill.1992). In *Kellerman*, the plaintiff brought claims in state court against a telecommunications carrier for fraud and deceptive advertising. The court, in declining to remove to federal court, held that state law remedies which do not interfere with the federal government's authority over interstate telephone charges or services, and do not otherwise conflict with an express provision of the Communications Act, are preserved by the savings clause. *Kellerman*, 98 Ill.Dec. at 30, 493 N.E.2d at 1051.

Likewise, in *American Inmate*, the court declined to follow *Ivy* and held that the federal court did not have subject matter jurisdiction over a claim against a telecommunications carrier for breach of contract. 787 F.Supp. at 855. Again, the court held that the savings clause of the Communications Act preserved a state law breach of contract claim.

The Court observes that a broad reading of jurisdiction under the Communications Act would come at a time when the federal calendars are overly congested. Congress has evidenced a concern for the federal calendar in its attempt to limit federal jurisdiction by raising the jurisdictional amount in federal diversity cases. *See* 28 U.S.C. § 1332 (1988). Consequently, this Court, *sua sponte*, finds that federal subject matter jurisdiction does not exist for this claim under 28 U.S.C. §§ 1331 or 1337 (1982) or under the Communications Act of 1934, 47 U.S.C. § 151 *et seq.* (1982).

Based on the files, records, and proceedings herein, IT IS ORDERED that:

Plaintiff's claims are dismissed without prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.